IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JESSE L. GOODEN**,                                    Case No. 5:12 CV 2139

      Petitioner,                                         Judge Sara Lioi

      v.                                                       REPORT AND RECOMMENDATION

**MARGARET BRADSHAW,**

      Respondent.                                       Magistrate Judge James R. Knepp II

### INTRODUCTION

This action is initiated by *pro se* Petitioner Jesse L. Gooden, a prisoner in state custody, seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Margaret Bradshaw filed a Return of Writ (Doc. 4), and Petitioner filed a Reply (Doc. 7). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (non-document entry dated September 11, 2012). For the reasons discussed below, the undersigned recommends the Petition be denied and dismissed. Further, the undersigned denies Petitioner's requests for an evidentiary hearing and appointment of counsel.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, "the state court's factual findings are presumed correct unless rebutted by the habeas petitioner by clear and convincing evidence." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); 28 U.S.C. § 2254(e)(1). "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). The Ninth District Court of Appeals set forth the following facts:

On October 9, 2008, close to 11:00 p.m., appellant and a male passenger were sitting in appellant's dark-colored Ford Taurus, parked in a McDonald's parking lot located on Wolf Ledges in the City of Akron, Ohio. That night, Detective Nicholas Gray, an officer with the University of Akron's Police Department assigned to the Summit County Drug Unit was assisting with directed patrols in the area surrounding the university. Detective Gray was working in an unmarked pick-up and wearing plainclothes. The detective had parked his vehicle across the street from the Wolf Ledges' McDonalds observing the area. He testified the McDonald's parking lot is, in his experience, a common meeting area for drug deals.

While looking on, the detective noticed appellant's vehicle with an illuminated dome light. He decided to pull into McDonalds, park next to the Taurus, and, because his truck sat high off the ground, peer into the car. Upon doing so, the officer noted he saw no items indicating the men were or had been dining at the restaurant, i.e., no McDonald's bags or cups. Instead, he saw the passenger holding a compact CD player in his right hand with his left hand "closed like a fist with the nails facing up in the air toward the ceiling." Further, the detective testified the driver had what appeared to be a clear, plastic baggy in his left hand. Although he could not verify the contents of the bag, he testified it is common for drug dealers to carry contraband in sandwich bags or Ziploc bags.

Given his observations, Detective Gray radioed Detective Michael Yavanno, another officer assigned to the Summit County Drug Unit. According to Detective Gray, Detective Yavanno arrived within 10 to 15 seconds in an unmarked SUV and parked behind appellant's Taurus. Both officers exited their vehicles and approached appellant's car. Detective Gray, equipped with his flashlight, knocked on the passenger-side window, which was cracked "a couple of inches," and said "Hey, guys, police, what's going on?" At approximately the same time, Detective Yavanno, who was wearing his law enforcement badge around his neck, knocked on the driver's-side window, which was closed, and stated, "police."

Appellant looked at Detective Gray. When the latter cast his light inside the vehicle, appellant put his hand on the gearshift and put the car in reverse. Detective Gray ordered appellant to keep the vehicle in park. Appellant disregarded the order, and reversed the car. The vehicle initially moved slowly but then sped up ramming Detective Yavanno's SUV. According to Gray, appellant's car rammed Yavanno's vehicle "so hard that you could actually hear his tire spinning[,] like he [was] trying to move the vehicle."

At that point, Detective Gray drew his firearm and shouted "Police, police, stop." Gray testified, after the Taurus had pushed Yavanno's SUV back, it had angled itself in such a way that it was facing him; according to Gray, appellant then put the car in drive and came directly towards him. He continued:

"I thought for sure that this vehicle is going to crush me, I'm going to be killed; I'm going to be crushed underneath that vehicle."

\*\*\*

"I had a lot of things that went through my mind, but I thought I have to do something, and I'm not going to be able to hop on the vehicle, so I decided that hopefully I can fire at the driver and hopefully get the vehicle to stop or get the direction to change to where he does not run me over."

Detective Gray then fired four rounds at the Taurus and at "the last possible split second the vehicle made an abrupt left turn \*\*\*." Detective Yavanno similarly testified that when "the driver put the car into drive, you could hear the wheels chirp [and] began [going] straight forward, Detective Gray fired his weapon a few times, at the last second the vehicle cut to the left \*\*\*." Detective Yavanno further testified that, in his estimation, Detective Gray was "definitely" in danger of being struck by the vehicle when he fired his weapon.

After veering away from Detective Gray, the vehicle jumped over a curb, drove over some bushes, and sped away into the night. Due to their unmarked vehicles, the officers were not equipped to initiate a full chase.

The record indicates that appellant was hit by at least one of the shots fired by Detective Gray. After an investigation, he was eventually apprehended at a local hospital and arrested.

(Ex. 12, Doc. 4-1, at 2-4).

### STATE COURT CONVICTION

On October 23, 2008, a Summit County Grand Jury issued an indictment charging Petitioner with one count of felonious assault under Ohio Revised Code § 2903.11(A)(2) (Count One), one count of failure to comply with order or signal of police under R.C. § 2921.331(B) (Count Two), and one count of vandalism under R.C. § 2909.02(B)(2) (Count Three). (Ex. 1, Doc. 4-1, at 1-2). On November 10, 2008, a second count of felonious assault was added to the indictment (Count Four). (Ex. 2, Doc. 4-1). Through counsel, Petitioner pled not guilty to all counts.

3

A jury trial commenced on July 15, 2009. (Ex. 6, Doc. 4-1, at 1). At the state's request, the trial court dismissed Count One for felonious assault, and the trial proceeded on the remaining charges. (Ex. 7, Doc. 4-1, at 1). At the close of the state's case, Petitioner moved for acquittal pursuant to Ohio Crim. R. 29, which was denied. (Doc. 4-5, at 445-450). Petitioner's renewed motion for acquittal was also denied. (Doc. 4-5, at 451).

On July 18, 2009, Petitioner was found guilty of failure to comply with order or signal of police, vandalism, and one count of felonious assault. (Exs. 3-6, Doc. 4-1). However, the verdict forms indicated Petitioner was found guilty of felonious assault as charged in Count One (which had been dismissed), and there was no verdict form for Count Four. (Exs. 3, 6, Doc. 4-1). On July 17, 2009, the trial court issued a *nunc pro tunc* entry to correct the error regarding Counts One and Four. (Ex. 7, Doc. 4-1).

On July 24, 2009, the court ordered Petitioner to serve a one year sentence for each of Counts Two and Three and eight years on Count Four. (Ex. 8, Doc. 4-1, at 1-2). The Court further ordered that Counts Two and Four be served consecutively with each other and concurrently with Count Three, for an aggregate sentence of nine years' incarceration. (Ex. 8, Doc. 4-1, at 2).

## DIRECT APPEAL

Represented by new counsel, Petitioner filed a timely notice of appeal to the Ninth District Court of Appeals. (Ex. 9, Doc. 4-1). There, Petitioner raised two assignments of error:

1.   The trial court erred and abused its discretion in violation of the due process clause of the Fourteenth Amendment, by failing to sustain Defendant-Appellant's motion for judgment of acquittal, made pursuant to Rule 29, Ohio Rules of Criminal Procedure, both at the end of the State's case and again at the end of the case.

4

> 2.      The trial court committed plain error by sentencing Defendant-Appellant
> to such an extensive period of time in light of the Court's reasoning as set
> forth in the sentencing hearing.

(Ex. 10, Doc. 4-1, at 1). The state filed a brief in response. (Ex. 11, Doc. 4-1). On May 5, 2010,

the court of appeals affirmed the judgment of the trial court. (Ex. 12, Doc. 4-1).

Proceeding *pro se*, Petitioner filed a timely notice of appeal with the Ohio Supreme Court

on July 16, 2010. (Ex. 13, Doc. 4-1). In his memorandum in support of jurisdiction, Petitioner set

forth the following propositions of law:

> 1.      Appellant's conviction for felonious assault against a peace office[r] was
> not supported by sufficient evidence in violation of the Fifth and
> Fourteenth Amendments to the United States Constitution.
>
> 2.      The Court of Appeals lacked subject matter jurisdiction to entertain the
> Appellant's direct appeal, violating the due process and equal protection
> clause in the Fourteenth Amendment.

(Ex. 14, Doc. 4-1, at *i*). The state filed a waiver of memorandum in response. (Ex. 15, Doc. 4-1).

On September 29, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the case

because it did not involve any substantial constitutional question. (Ex. 16, Doc. 4-1).

### MOTION FOR NEW TRIAL

On January 5, 2010, Petitioner filed a motion for new trial pursuant to Crim. R. 33(B).

(Ex. 17, Doc. 4-1). Petitioner alleged evidence was newly revealed that the judges of the Ninth

District Court of Appeals recused themselves from Petitioner's appellate case because a staff

attorney for the court of appeals served as a juror at Petitioner's trial. (Ex. 17, Doc. 4-1). Further

alleging the staff attorney failed to disclose his true occupation during jury selection, Petitioner

moved the court of appeals to vacate his conviction and remand the case for a new trial. (Ex. 17,

Doc. 4-1, at 2). The state opposed because the trial court lacked jurisdiction while Petitioner's

direct appeal was pending. (Ex. 18, Doc. 4-1). On January 21, 2010, following a hearing, the trial

court denied Petitioner's motion. (Ex. 19, Doc. 4-1). Petitioner did not appeal.

### APPLICATION TO REOPEN UNDER APP. R. 26(B)

On July 28, 2010, Petitioner filed a *pro se* application for reopening direct appeal under

App. R. 26(B). (Exs. 20-21, Doc. 4-1). There, he alleged his appellate counsel was ineffective

due to failure to raise the following assignments of error on direct appeal:

1. The Court of Appeals lacked subject matter jurisdiction to entertain the Appellant's direct appeal, violating the due process and equal protection clause in the Fourteenth Amendment.

2. Dismiss/vacate sentencing entry pursuant to R.C. 2967.28.

(Ex. 21, Doc. 4-1, at 5, 8).

On September 7, 2011, Petitioner filed a motion to request permission to supplement his

application for reopening appeal with the following additional assignments of error:

3. Critical stage doctrine under the analysis of *United States v. Cronic*, 466 U.S. 648; 104 S. Ct. 2039; 80 L. Ed. 2d 657, the appellant was denied his right to counsel during critical stage where there were jury questions that were not read or answered in court upon the record but were entered into the evidence without the knowledge of the attorney or the defendant.

4. Sentencing court improperly cited Defendant's exercise of a constitutional right as an aggravating factor in sentencing Defendant as cited in *State v. Glass*, 2004-Ohio-4493, as stated in *United States v. Mitchell*, 526 U.S. 314; 119 S. Ct. 1307; 143 L. Ed. 2d 424, stating a sentencing court may not draw an adverse inference from a defendant's silence in determining facts relating to the circumstances and details of the crime.

5. Defendant was sentenced for a felony of the third degree when the jury verdict was only sufficient for a misdemeanor of the first degree due to *State v. Pelfrey*, 112 Ohio St. 3d 422; 2007 Ohio 256 and R.C. 2945.75, where the verdict for failure to comply as to count two is insufficient to stand as a felony.

(Ex. 21, Doc. 4-1).

On December 7, 2011, the court of appeals denied the first two claims on the merits and denied the claims raised in the supplement because they were procedurally defaulted. (Ex. 22, Doc. 4-1). Petitioner filed for reconsideration, which was denied on February 21, 2012. (Exs. 23, 24, Doc. 4-1).

Petitioner filed a timely appeal to the Ohio Supreme Court where he set forth the following propositions of law:

1.    An appellate court commits reversible error, to the prejudice of an appellant-applicant, in holding that an application for reopening under App.R. 26(B), per se, requires both assignments of error and arguments in support of assignments of error, in order to comply with App.R. 26(B)(2)(c).

2.    An appellate court commits reversible error, to the prejudice of an appellant-applicant, in holding that supplemental proposed assignments of error, to an application for reopening under App.R. 26(B), requires an additional affidavit in order to comply with App.R. 26(B)(2)(d).

3.    An appellate court commits reversible error, to the prejudice of an appellant-applicant, in holding that an application for reconsideration under App.R. 26(A)(1), is not permitted to call to the attention of an appellate court an obvious error in its judgment denying an appealing party's application for reopening under App.R. 26(B).

4.    An appellant is deprived of the effective assistance of appellate counsel when meritorious issues which could result in the reversal of his conviction and/or sentence is omitted from assigned error in a direct appeal from a jury trial.

(Exs. 25-26, Doc. 4-1). The state filed a waiver of memorandum in response. (Ex. 27, Doc. 4-1). On May 23, 2012, the Ohio Supreme court dismissed the case because it did not involve any substantial constitutional question. (Ex. 28, Doc. 4-1).

### MOTION FOR PROPER SENTENCING ORDER AND FINAL ORDER

On October 8, 2010, Petitioner filed a motion for proper sentencing order and final order where he alleged his sentencing entry of conviction contained a fatal error because no such jury verdict form existed in support of conviction under Count Four as set forth in the sentencing entry. (Ex. 29, Doc. 4-1, at 3). Based on these facts, Petitioner requested the sentencing order be amended. (*Id*., at 3-4). Petitioner also argued his judgment of conviction was not a final appealable order because an outstanding charge, Count Four, prohibited a final order from being issued. (*Id*. at 4-5). Moreover, Petitioner argued post-release control could not be imposed on Count Four because it did not have a judgment of guilt and the remaining counts did not mandate court supervision. (*Id*. at 5-6). Finally, Petitioner argued that due to the lack of a final appealable order, the Ninth District Court of Appeals lacked jurisdiction to consider his direct appeal and therefore, *res judicata* could not bar his claims. (*Id*. at 6-7).

The state filed a memorandum in opposition (Ex. 30, Doc. 4-1) and on October 20, 2010, the trial court found Petitioner failed to raise the claims on direct appeal and denied the motion. (Ex. 31, Doc. 4-1).

On November 12, 2010, Petitioner, *pro se*, filed a timely notice of appeal (Appeal No. 25677). (Ex. 32, Doc. 4-1). In his brief, Petitioner argued:

> 1.    The trial court erred in sentencing the appellant on felonious assault against a peace officer as contained in (Count Four) of the indictment for which the jury didn't return a verdict of guilty on.

(Ex. 33, Doc. 4-1, at 3). The state filed a brief in response. (Ex. 34, Doc. 4-1). On September 30, 2011, finding Petitioner was not properly notified of post-release control, the court of appeals reversed the trial court's judgment denying Petitioner's motion for proper sentencing order and

8

remanded the case for the limited purpose of including proper notification of post-release control. (Ex. 35, Doc. 4-1).

## MOTION TO CORRECT VOID SENTENCE

On January 7, 2011, Petitioner filed a motion to correct void sentence pursuant to Ohio Revised Code § 2967.28. (Ex. 36, Doc. 4-1). The state filed a brief in opposition. (Ex. 37, Doc. 4-1). On January 13, 2011, the trial court found that due to Petitioner's pending case in Appeal No. 25677 (regarding motion for proper sentencing order and final order) the court was without jurisdiction to entertain the motion. (Ex. 38, Doc. 4-1).

## RESENTENCING

On February 10, 2012, pursuant to the court of appeals' order of remand, Petitioner was resentenced to the same terms of imprisonment as his original sentencing entry and properly notified of the terms and conditions of post-release control under Ohio Revised Code § 2929.191. (Ex. 39, Doc. 4-1). Petitioner did not appeal his resentencing.

## FEDERAL HABEAS CORPUS

On October 25, 2012, Petitioner filed the instant Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1), asserting the following grounds for relief:

> **GROUND ONE**: The Petitioner's conviction for felonious assault against a peace officer was not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution.
> **Supporting Facts**: The State of Ohio failed to prove that Mr. Gooden caused or attempted to cause physical harm to a police officer. In this instant case, there was no physical harm caused, therefore the prosecution bears the burden to prove beyond a reasonable doubt that each essential element was proven. Here the Ohio Court of Appeals relied on the officer's irrational, subjective belief that he thought he was going to be crushed. Under Ohio Law the attempt to cause physical harm is the standard is weather it is an overt act directed toward an assault which is beyond the behavior that merely causes another to believe physical harm is imminent. The evidence provided by the states own expert

9

witness supports the fact that Mr. Gooden was never had the intent to cause the officer physical harm because he was never headed in his direction.

**GROUND TWO**: Appellant was denied the effective assistance of appellate counsel, when counsel failed to present that the conviction was obtained violating the Petitioner's Sixth Amendment right to counsel at a critical stage of the proceeding.

**Supporting Facts**: The Petitioner was denied counsel during a critical stage of the criminal process. An uncounseled critical stage proceeding was held by the trial court to answer several jury questions after deliberations had started. In addition to defense counsel not being present, the Petitioner was not present, nor did the Petitioner waive his right to counsel at this critical stage in the criminal proceeding.

**GROUND THREE**: Appellant was denied the effective assistance of appellant counsel when counsel failed to present that the sentencing court improperly cited Appellant's exercise of a constitutional right, violating the Fifth, Sixth and Fourteenth Amendments.

**Supporting Facts**: During the Appellant's sentencing hearing, the trial court's comments were inexorably to his rights to both remain silent and elect to have a jury trial, and were inextricably drawn adversely by the trial court in an aggravating capacity when engaging within the consideration relative to sentencing Appellant.

(Doc. 1, at 20-22).

## JURISDICTIONAL ISSUES

In determining whether to issue a habeas writ, the standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA) govern the district court's review of a state court decision. *French v. Jones*, 332 F.3d 430, 435-36 (6th Cir. 2003), *cert. denied*, 540 U.S. 1018 (2003); 28 U.S.C. § 2254. Before a reviewing court may decide a habeas writ on the merits, a petitioner must overcome the one-year statute of limitations promulgated by AEDPA. *Allen v. Yukins*, 366 F.3d 396, 399 (6th Cir. 2004), *cert. denied*, 543 U.S. 865 (2004).

Here, it is undisputed that the Petition is timely filed.

10

***Procedural Default – Grounds Two and Three***[1]

Before a Petitioner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court and to all appropriate state courts prior to that. § 2254(b), (c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987).

When a habeas petitioner fails to present a claim to the state court either due to: 1) his failure to fairly raise that claim before the state courts while state remedies are still available; or 2) noncompliance with a state procedural rule which prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on review. *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

The first procedural bar mentioned above has two components, which bar federal review on either occasion. First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the [s]tate's established appellate review process." *O'Sullivan v. Boerckrel*, 526 U.S. 838, 848 (1999). In Ohio, "'one complete round' of the state's appellate review system" includes presenting the claim to a court of appeals and the Ohio Supreme Court. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003).

Second, a petitioner must fairly present his claim as a federal constitutional issue. This requirement is strictly followed in the Sixth Circuit, to the point where catch-all allegations, such as a defendant claiming he was denied his constitutional right to a fair trial, when supported only

---

1. Ground One, challenging sufficiency of the evidence for conviction of felonious assault of a peace officer, was properly raised before the Ninth District on direct appeal and to the Ohio Supreme Court. Therefore, Ground One is not procedurally defaulted.

by state law, does not fairly apprise the state court of a specific constitutional theory. *Weaver v. Foltz*, 888 F.3d 1097, 1099 (6th Cir. 1989). Likewise, the phrases "fair trial" and "due process", by themselves, "do not call to mind a specific right protected by the Constitution." *Weaver*, 888 F.3d at 1099 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984)).

Concerning the second procedural bar – noncompliance with a state procedural rule, federal habeas courts look to the four part test established in *Maupin v. Smith*:

1) whether the petitioner failed to comply with an applicable state procedural rule;

2) whether the state courts actually enforced the state procedural sanction;

3) whether the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review;

4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice".

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

A federal habeas court is barred from hearing issues that could have been raised in state court, but were not, and can no longer be presented to the state court due to *res judicata* or waiver. *Wainwright*, 433 U.S. 72; *Engle*, 456 U.S. 107. For example, in Ohio, claims must be presented on direct appeal if possible; otherwise *res judicata* bars their litigation in subsequent state proceedings. *Seymour*, 224 F.3d at 555; *see State v. Perry*, 10 Ohio St. 2d 175 (1967). Ohio's *res judicata* procedural bar is an adequate and independent state ground to foreclose federal habeas review. *Seymour*, 224 F.3d at 555; *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1998).

12

If, because of procedural default, a habeas corpus petitioner can no longer present one or more of his federal claims to the state courts, he has waived those claims for purposes of federal habeas review. Unless, however, a petitioner can show both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

In extreme cases, when cause and prejudice cannot be shown, a federal habeas court may hear a defaulted constitutional claim if the petitioner shows his conviction is the result of a fundamental miscarriage of justice, i.e., that he is "actually innocent." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this regard, a petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

Here, Petitioner argues ineffective assistance of appellate counsel because two arguments were allegedly not presented on direct appeal. First, in Ground Two, Petitioner argues he was not present during a critical stage of the trial proceedings, when the jury asked questions. In Ground Three, Petitioner claims that at sentencing, the trial court impermissibly penalized him for exercising his right to remain silent.

However, Petitioner failed to fairly present these claims in state court on direct appeal; therefore, they are procedurally defaulted. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("Thus, if an Ohio Petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted."). Furthermore, Petitioner's failure to raise these claims cannot be excused by ineffective assistance of appellate counsel. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994) ("Though ineffective assistance of counsel may constitute cause, 'the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.'") (quoting *Murray*, 477 U.S. at 486-88).

Additionally, Grounds Two and Three are procedurally defaulted due to Petitioner's noncompliance with a state procedural rule which prevented the state courts from reaching the merits of the claims.

As Petitioner explains, the claims were first raised in his supplement to the application to reopen direct appeal under Ohio Appellate Rule 26(B). (Doc. 7, at 2). The Ninth District Court of Appeals declined to review Petitioner's supplemental Rule 26(B) application because it "merely provided the foregoing outlined proposed assigned errors without any argumentation or support of the alleged errors" and failed to "clearly elucidate the nature of [Petitioner's] potential challenges." (Ex. 22, Doc. 4-1, at 8).

Thus, pursuant to *Maupin*, the applicable procedural rule is App. R. 26(B)(2)(d)-(e), which requires the petitioner to include a sworn statement with a petition and argumentation in support of assignments of error, such as citations to applicable authorities and references to the record. Specifically, Ohio App. R. 26(B)(2)(d) and (e) states:

An application for reopening shall contain all of the following:

\* \* \*

(d) A sworn statement on the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record;

(e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.

Under the second *Maupin* prong, the Ninth District enforced the procedural rule when it found the supplemental Rule 26(B) application procedurally defaulted based in part upon failure to include an affidavit. (Ex. 24, Doc. 4-1, at 2). To this end, the court of appeals held on Petitioner's motion for reconsideration:

> Even though appellant advanced three supplemental assignments of error in compliance with App.R. 26(B)(2)(c), he failed to provide this court with a sworn statement of the bases of the claims alleged in his supplemental assignments of error in violation of App.R. 26(B)(2)(d). Without a sworn statement and argumentation in support of the supplemental assignments of error, appellant not only failed to comply with App.26(B), but he also failed to "clearly elucidate the nature of [his] potential challenges". See December 11, 2011 judgment, p. 8.

(Ex. 24, Doc. 4-1, at 3).

Turning to the third *Maupin* factor, this Court has found App. R. 26(B)(2)(e) to be an adequate and independent state ground to foreclose federal review. *Grant v. Sheldon*, 2012 U.S. Dist. LEXIS 115036, at \*30-31 (N.D. Ohio 2012), *report and recommendation adopted by* 2012 U.S. Dist. LEXIS 114887 ("a review of Ohio caselaw shows that the affidavit requirement in Rule 26(B) applications is well-established and regularly enforced").

Petitioner directs the undersigned to *State v. Smiley*, 1998 Ohio App. LEXIS 1886, at \*6 (8th Dist.), which found "an application for reopening with merit should supersede any procedural deficiency of the application." However, *Smiley* and the cases cited therein are exceptions to the regularly enforced procedural rules set forth in App. R. 26(B)(2)(e).

15

In *Smiley*, the court found justice would be better served by reopening the appeal in state court because "a review of the merits demonstrate[d] a genuine issue of ineffective assistance of appellate counsel." *Smiley*, 1998 Ohio App. LEXIS 1886, at *5. In closing arguments, the attorney in *Smiley* told the jury his client accidently hit the victim; but his client testified he never struck the victim. *Id.*, at *3. This mistake, combined with "not overwhelming" evidence of guilt, caused the court to remand the case despite the appellant's procedural errors. *Id. Smiley* stands for the proposition that when a court looks to the merits of the appellant's case despite the procedural deficiencies, it is an exception to the rule. However, *Smiley* does not overcome this Court's finding that the affidavit requirement in Rule 26(B) is an adequate and independent ground on which to foreclose federal review. *Grant*, 2012 U.S. Dist. LEXIS 115036, at *30-31.

With regard to the fourth *Maupin* factor, Petitioner has not demonstrated cause for his failure to file an affidavit with his App. R. 26(B) supplemental motion. He argues he was unable to obtain copies of the transcript and therefore could not address with required specificity the manner in which he was prejudiced under App. R. 26(B)(2)(d). (Doc. 7, at 5-6). Even if the Court accepts Petitioner's argument, it cannot amount to cause because it does not explain the failure to include a sworn affidavit under App. R. 26(B)(2)(e).[2]

Because Petitioner has not shown cause, the Court does not reach the issue of prejudice. *See*, *Barkley*, 240 F. Supp. 2d, at 714 ("When a petitioner fails to show cause 'for not asserting

---

2. The Court notes Respondent's argument, to the extent Petitioner argues these claims relied on information outside of the record and thus could not have been raised, such argument would properly be brought under Ohio Rev. Code §2953.21 in a petition for post-conviction relief. However, Petitioner did not present that argument there, and the failure to timely file a petition for post-conviction relief is grounds for procedural default. *Rowe v. Buchanan*, 2012 U.S. Dist. LEXIS 144383, at *12-13 (S.D. Ohio).

16

his ineffective assistance of appellate counsel claim properly in the Ohio courts, a federal court may not reach the merits of the *habeas* claim.'") (quoting *Coleman*, 244 F.3d at 540).

Last, Petitioner's procedural default is not excused under the "fundamental miscarriage of justice" exception. *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005); *Schlup v. Delo*, 513 U.S. 298 (1995). To meet this standard, Petitioner would need to present new evidence of innocence that is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327. New evidence may be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324.

Petitioner has not presented new evidence of innocence. *Id*.; *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). Rather, Petitioner claims the nature of the claims "warrants taking [] additional precautions to avoid a manifest miscarriage of justice." (Doc. 7, at 8). However, a claim for relief is not sufficient to rise to the necessary standard without more, and therefore, Petitioner's procedural default is not excused under the fundamental miscarriage of justice exception.

In his Reply, Petitioner requests the Court order full briefing on the merits of Grounds Two and Three. (Doc. 7, at 15). However, because the claims are procedurally defaulted, the Court need not reach the merits and full briefing would be futile. Accordingly, Petitioner's request for further briefing should be denied.

For the above-stated reasons, the undersigned recommends the Court find Grounds Two and Three procedurally defaulted.

### STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or

17

involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

Due process requires conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309–16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

In examining a sufficiency claim, a habeas court can only look to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. Even if the federal habeas court would not have convicted the petitioner, "it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution", and even if a rational trier of fact could not have found a petitioner guilty, the federal habeas court still must "defer to the state appellate court's sufficiency determination so long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing 28 U.S.C. § 2254(d)(2)).

Thus, the Court's task in Petitioner's case is to determine whether it was objectively unreasonable for the Ninth District Court of Appeals to conclude a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have found beyond a reasonable doubt that Petitioner committed the elements of the convictions.

Ohio's Ninth District Court of Appeals rejected Petitioner's insufficiency challenge as follows:

> Although appellant styles his first assignment of error as a challenge merely to the sufficiency of the evidence, his primary argument is a challenge to the weight of the evidence. We shall therefore address each legal challenge in turn.
>
> Evidential sufficiency is an inquiry into whether the state introduced adequate evidence to support the verdict as a matter of law. *State v. Johnson*, 9th Dist. No. 06CA008911, 2007 Ohio 1480, at P5. "An appellate court reviewing whether the evidence was sufficient to support a criminal conviction examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the mind of the average juror of the defendant's guilt beyond a reasonable doubt." *State v. Troisi*, 179 Ohio App.3d 326, 329, 2008 Ohio 6062, 901 N.E.2d 856. A reviewing court may not reweigh or reinterpret the evidence; rather, the proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Cepec*, 9th Dist. No. 04CA0075-M, 2005 Ohio 2395, at P5, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492

While a test of evidential sufficiency requires a determination of whether the state has submitted enough evidence to meet its burden of production, a manifest weight inquiry examines whether the state met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997 Ohio 52, 678 N.E.2d 541. (Cook, J., concurring). That is, a manifest weight challenge concerns:

> "'[T]he inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible* evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.'"

(Emphasis sic.) Id. at 387, citing Black's Law Dictionary (6th Ed. 1990).

The appellate court must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." *Thompkins*, supra. As a result, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Johnson* (1991), 58 Ohio St.3d 40, 41, 567 N.E.2d 266.

Appellant initially takes issue with the sufficiency and weight of the evidence upon which his conviction for felonious assault against a peace officer was based. That crime is defined under R.C. 2903.11(A)(2), and prohibits a person from knowingly causing or attempting to cause physical harm to a peace officer by means of a deadly weapon or dangerous ordnance. R.C. 2901.22(B) provides:

> "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Furthermore, R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." This court has

20

repeatedly held that a car, used as a weapon, can be considered a deadly weapon within the meaning of the statute. See *State v. Millender*, 9th Dist. No. 21349, 2003 Ohio 4384, at P15; see, also, *State v. Jaynes*, 9th Dist. No. 20937, 2002 Ohio 4527, P12.

With respect to sufficiency, Detective Gray testified that once he identified himself as a police officer, appellant immediately backed into Detective Yavanno's unmarked vehicle. Appellant then put his vehicle in drive and drove straight towards Detective Gray. On direct examination, Detective Gray stated he "thought for sure that this vehicle [was] going to crush [him]." He then drew his firearm and shot at the oncoming vehicle four times hoping to "get the vehicle to stop or get the direction to change to where [the driver] does not run [him] over." According to the detective, the vehicle changed direction at the last possible second. This testimony suffices to demonstrate that appellant, as the driver of the motor vehicle at which Detective Gray discharged his firearm, made a conscious decision to steer his vehicle in the immediate direction of the officer. Thus, we hold a rational jury could conclude, beyond a reasonable doubt, that appellant knowingly attempted to cause the officer physical harm by means of a deadly weapon.

(Ex. 12, Doc. 4-1, at 5-8). Subsequently, the appellate court went on to address Petitioner's arguments against the weight of the evidence. (*Id.*, at 8-10). Petitioner's challenge to the latter is addressed below; in short, the claim is non-cognizable in this Court.

Based on the testimony presented, a jury could infer Petitioner was guilty of felonious assault of a peace officer beyond a reasonable doubt. Indeed, two eye-witnesses testified that Petitioner, the driver of a Ford Taurus, drove his car directly at Detective Nicholas Gray of the Akron Police Department and only turned away after Detective Gray fired his weapon.

To this end, Detective Gray testified he was working alongside Detective Michael Yavanno on undercover patrol the night of the crime. (Doc. 4-2, at 43-44). In an unmarked car, Detective Gray pulled into a McDonald's parking lot, which in his experience was a common meeting area for drug deals, to observe a dark-colored Ford Taurus. (Doc. 4-2, at 49, 52, 54-55). Driving a truck, Detective Gray was able to look down into the Taurus and could observe the persons inside the Taurus clearly because their dome light was on. (Doc. 4-2, at 55). Having

21

observed suspicious activity indicative of a drug deal, Detective Gray radioed Detective Yavanno, who was parked a block away. (Doc. 4-2, at 55-58). Both men approached the Taurus and identified themselves as police. (Doc. 4-2, at 60-64).

At that point, Detective Gray testified the driver "immediately looked over at [him] and started to put his hand on the gearshift to put the car in reverse." (Doc. 4-2, at 64-65). The driver ignored Detective Gray's order to put the car in park, and reversed the vehicle and hit Detective Yavanno's vehicle "so hard that you could actually hear his tire spinning like he [wa]s trying to move the vehicle." (Doc. 4-2, at 65). Detective Gray drew his firearm and yelled "Police, police, stop," and was standing in front of the Taurus. (Doc. 4-2, at 65).

According to Detective Gray, the driver put the vehicle in drive and drove straight towards him. (Doc. 4-2, at 66). Detective Gray thought "for sure" that the vehicle was going to crush him and he would be killed. (Doc. 4-2, at 66). Detective Gray then began to fire upon the vehicle, which made an abrupt left turn "at the last possible split second" avoiding contact with the detective. (Doc. 4-2, at 67-68). Detective Gray was sure the vehicle did not change direction until he fired his weapon, noting he believed firing on the car is what saved him from getting run over. (Doc. 4-2, at 68).

Detective Yavanno provided similar testimony. He declared, "[t]he car went into drive; the driver put the car into drive, you could hear the wheels chirp, began straight forward, Detective Gray fired his weapon a few times, at the last second the vehicle cut to the left". (Doc. 4-2, at 143). Detective Yavanno was sure Detective Gray was in danger of being struck by the vehicle. (Doc. 4-2, at 143-44).

Petitioner argues the state did not introduce any evidence showing his intent to cause harm to the officer. (Doc. 7, at 12). However, as the appellate court noted, the testimony as stated

above demonstrates Petitioner made a "conscious decision to steer his vehicle in the immediate direction of the officer." (Ex. 12, Doc. 4-1, at 8).

Petitioner next argues the appellate court inappropriately "addressed the sufficiency argument under a context of manifest weight argument." (Doc. 7, at 13). Defendant argues the state court properly classified Petitioner's claims. (Doc. 4, at 29). Upon review, the undersigned finds the appellate court addressed Petitioner's claims under both manifest weight and sufficiency standards. Therefore, Petitioner's argument is not well-taken.

Moreover, to the extent Petitioner claims his verdict was against the manifest weight of the evidence, that claim is non-cognizable in habeas proceedings and must be dismissed. *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *Morris v. Hudson*, 2007 WL 4276665, at *2 (N.D. Ohio 2007) (citing *Steele v. Tambi,* 2007 U.S. Dist. LEXIS 33318, at *36-37).

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner guilty of felonious assault of a peace officer beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Further, the appellate court's rejection of Petitioner's sufficiency claim was neither contrary to federal law, nor objectively unreasonable.

### *Request for Evidentiary Hearing*

An evidentiary hearing is not warranted if, as here, it would be futile because the existing record is complete and no fact that could have been developed would result in the granting of the writ. *Martin v. Hall*, 2012 U.S. Dist. LEXIS 22637, at *6, 2012 WL 601912 (N.D. Ohio). Specifically, AEDPA limits evidentiary hearings to only the following instances:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Having reviewed the Petition and Reply, the Court finds no "new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)-(B). For these reasons, the undersigned denies Petitioner's request for an evidentiary hearing.

***Petitioner's Request for Appointed Counsel***

There is no constitutional right to the appointment of counsel in civil cases, and the court has broad discretion in determining whether counsel should be appointed. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir.1987) ("[A]ppointment of counsel in a civil case is ... a matter within the discretion of the court. It is a privilege and not a right.") (internal quotation omitted). The Criminal Justice Act authorizes federal magistrate judges to appoint counsel to a petitioner who brings a habeas petition under Sections 2241, 2254, or 2255. 18 U.S.C. § 3006A(a)(2)(B). Such an appointment is made only when "the interests of justice so require" and the person is financially eligible. *Id.* A district court does not abuse its discretion by declining to appoint counsel where the issues in the case are straightforward and capable of resolution on the record or the Petitioner has a good understanding of the issues and the ability to present forcefully and coherently his contentions. *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Swazo v.*

24

*Shillinger*, 23 F.3d 332, 333 (10th Cir. 1994); *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991).

Here, Petitioner's claims are neither novel nor complex, and do not involve new or undiscovered facts. Moreover, Petitioner filed a coherent Petition, complete with legal support, and an extensive Traverse. (Docs. 1; 7). Therefore, the undersigned denies Petitioner's request for appointment of counsel (Doc. 7, at 2, 15).

## CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court find Petitioner's claims procedurally defaulted or without merit, and dismiss the Petition with prejudice accordingly. Further, the undersigned DENIES Petitioner's requests for an evidentiary hearing and appointment of counsel.

 s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).